UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CLINTONIA KENDRA KEATON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 2:22-cv-01945-EJY<br><br>**ORDER** |

Clintonia Kendra Keaton ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") terminating the prior finding that Plaintiff was entitled to disability insurance ("DIB") under Title II of the Social Security Act (the "Act"). ECF No. 18. On April 28, 2023, the Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's Motion for Reversal and/or Remand. ECF No. 20. On May 12, 2023, Plaintiff filed her Reply. ECF No. 21. For the reasons stated below, the Commissioner's decision is affirmed.

**I.　　BACKGROUND**

Plaintiff originally filed an application for Supplemental Social Security Income on December 23, 2009. Administrative Record ("AR") 261. On August 16, 2010, Plaintiff was found disabled. AR 33. On July 11, 2018, the Commissioner found Plaintiff was no longer disabled. AR 284-285. On December 26, 2018, Plaintiff submitted a formal request for reconsideration. AR 287. On January 31, 2020, the Commissioner affirmed the denial of benefits. AR 301-303. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ") on March 13, 2020. AR 315. The ALJ held a hearing on June 2, 2021 (AR 241-260), but mainly took testimony at a separate hearing on September 1, 2021 (AR 207-240). On October 8, 2021, the ALJ issued a decision finding Plaintiff's disability ended on July 1, 2018, and Plaintiff had not been disabled since that date. AR 30-45. Plaintiff requested review of the ALJ's decision (AR 382-385) that was denied

by the Appeals Council on August 30, 2022.  AR 1-6.  Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence is "more than a mere scintilla."  More than a scintilla of evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, -- U.S. --, 139 S.Ct. 1148, 1154 (2019)).  In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion."  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, … [the court] must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  However, a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted).  And, a court may not reverse an ALJ's decision based on a harmless error.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III. DISCUSSION

A. <u>Terminating Disability Under the Act</u>.

An ALJ's decision to terminate disability benefits will be upheld if it is supported by substantial evidence in the record and the correct legal standards were applied.  *Stout*, 454 F.3d at 1052.  At the core of an ALJ's analysis is whether there has been a medical improvement in a claimant's condition that changes the calculus of that claimant's Residual Functional Capacity ("RFC") and, by extension, his or her ability to work.  *Nathan v. Colvin*, 551 Fed.Appx. 404, 407 (9th Cir. 2014); *see also Vargas v. Kijakazi*, Case No. 2:20-cv-01570-JDP (SS), 2023 WL 2655811,

at *1 (E.D. Cal. Mar. 27, 2023).  Once a claimant is found to be disabled, there is a multi-step evaluation process used by the Commissioner to determine whether a claimant's disability has ended.  20 C.F.R. § 416.994(b)(5).

The seven steps consider:

Step 1. Does the claimant have an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).  If so, the claimant's disability continues.  If not, the analysis proceeds to step two.  *See* 20 C.F.R. § 416.994(b)(5)(i).

Step 2. Has there been medical improvement in the claimant's condition? If medical improvement has occurred, the analysis moves to Step 3.  If there has been no medical improvement, the analysis moves to Step 4.  *See* 20 CFR § 416.994(b)(5)(ii).

Step 3. Is the claimant's medical improvement related to the claimant's ability to work—that is, whether there has been an increase in the claimant's RFC?  If so, the analysis proceeds to Step 5.  *See* 20 C.F.R. § 416.994(b)(5)(iii).

Step 4. If there has been no medical improvement, does an exception to medical improvement apply?  There are two groups of exceptions (20 C.F.R. §§ 416.994(b)(3) and (b)(4)).  If one of the first group exceptions applies, the analysis proceeds to the next step.  If one of the second group exceptions applies, the claimant's disability ends.  If none apply, the claimant's disability continues.  *See* 20 C.F.R. § 416.994(b)(5)(iv).

Step 5. Are all the claimant's current impairments in combination severe?  If so, the analysis proceeds to the next step.  If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled.  *See* 20 C.F.R. § 416.994(b)(5)(v).

Step 6. After assessing the claimant's RFC, the ALJ must determine whether the claimant can perform past relevant work.  If so, the claimant's disability ends.  If not, the analysis proceeds to the last step.  *See* 20 C.F.R. § 416.994(b)(5)(vi).

Step 7. Does other work exist in the national economy that the claimant can perform, given the claimant's RFC and considering age, education, and past work experience? If the claimant can perform other work, she is no longer disabled.  If the claimant cannot perform other work, the disability determination continues.  In order to support a finding that an individual is not disabled at this step, the ALJ is responsible for providing evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experience.  *See* 20 C.F.R. § 416.994(b)(5)(vii).

At step one, the ALJ found that since July 1, 2018, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).  AR

35. At step two, the ALJ found Plaintiff's medical improvement occurred on July 1, 2018. AR 37. At step three, the ALJ found Plaintiff's medical improvement to be related to her ability to work because by July 1, 2018, Plaintiff's impairments from her initial disability determination no longer met or medically equaled the same listing that was met at the time of the initial determination. AR 37. After bypassing step four, the ALJ found at step five that since July 1, 2018, Plaintiff has continued to have a severe impairment or combination of impairments that cause more than a minimal limitation in Plaintiff's ability to perform basic work activities. AR 37.

In preparation for step six, the ALJ determined the following:

> Since July 1, 2018, based on the current impairments, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she is able to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an eight hour workday; sit six or more hours in an eight hour workday; frequently climb ramps and stairs but never climb ladders, ropes and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; tolerate occasional concentrated exposure to respiratory irritants, such as dust, odors, gasses, and fumes; tolerate occasional concentrated exposure to vibration; understand, remember, and carry out simple and routine work related instructions, and concentrate for periods of two hours on work related tasks before requiring a break; perform non-production pace/nonassembly line pace jobs with occasional workplace changes introduced gradually over time, occasional decision-making, and no responsibility for the safety of others; can interact occasionally with the general public, coworkers, and supervisors; and occasionally requires the use of a cane to ambulate to and from, and move about the work space.

AR 37-38.

Relying upon the testimony of the Vocational Expert ("VE"), the ALJ concluded that since July 1, 2018, Plaintiff has been unable to perform her past relevant work as a cashier/stocker or a school bus driver. AR 43. At step seven, in reliance on Plaintiff's age, education level, work experience, and the VE's testimony, the ALJ found Plaintiff capable of making a successful adjustment to work that exist in significant numbers in the national economy as an addressor, taper, or final assembler. AR 44-45. Therefore, the ALJ determined Plaintiff's disability ended on July 1, 2018, and Plaintiff has not become disabled again since that date. AR 45.

B.  Plaintiff's Arguments.

Plaintiff first contends the ALJ failed to properly evaluate the opinion of Kristy Muir, a nurse practitioner in psychiatry. ECF No. 18 at 7. In a one-page November 25, 2019 letter, Nurse Muir stated Plaintiff has the following diagnoses: major depression, general anxiety disorder, and panic

4

disorder. *Id. citing* AR 753. Nurse Muir also concluded that since these were chronic disorders, Plaintiff was unable to work. *Id. citing id.* In progress notes Nurse Muir indicated that because Plaintiff had poor cognition, coping skills, and concentration, Plaintiff could not function well enough to maintain employment. *Id. citing* AR 787, 789, 791.

Plaintiff argues the ALJ committed legal error because he applied the wrong set of regulations when analyzing Nurse Muir's opinion. *Id.* at 7-8. Plaintiff asserts since this case was filed before March 27, 2017, the ALJ should have conducted his analysis under 20 C.F.R. § 416.927 (the "pre-March 2017 regulations") and not 20 C.F.R. § 416.920c (the "post March 2017 regulations"). *Id.* at 8. Because the pre-March 2017 regulations were controlling, Plaintiff says the ALJ could not summarily disregard a medical opinion where the medical source attested to a patient's disability or inability to work. *Id.* Plaintiff also argues that even if the post March 2017 regulations were applied, the ALJ failed to address the conflict between his findings that Plaintiff had moderate limitations in various aspects of her mental health and Nurse Muir's opinion that Plaintiff had poor cognition, coping, and concentration skills. *Id.* at 9-10 *citing* AR 791.

Plaintiff next argues that in addition to failing to apply the correct legal standards to Nurse Muir's opinion, the ALJ applied the wrong regulations to other medical opinions in the record. *Id.* at 10. Plaintiff contends the ALJ did not evaluate the medical opinions under the pre-March 2017 hierarchical system, but instead evaluated them on the bases of consistency and supportability. *Id.* at 11-12. Finally, Plaintiff argues the ALJ should have considered whether Nurse Muir's opinion, which attests directly to Plaintiff's disability, is entitled to the greatest weight among all opinion evidence considering her longstanding relationship with Plaintiff. *Id.* at 12.

C.  The Commissioner's Response.

The Commissioner states the ALJ reasonably considered the statement made by Nurse Muir as well as all other opinions in the medical record. ECF No. 20 at 3. The Commissioner argues that even if Plaintiff is correct in her assertion that the ALJ applied the wrong set of Social Security regulations in his analysis, Plaintiff cannot show the error resulted in any harm. *Id.* The Commissioner argues the applicable regulations to direct statements concerning disability used prior to March 2017 required that such statements not be given "any special significance." *Id. citing* 20

1    C.F.R. § 416.920b(c)(3).  Therefore, according to the Commissioner, regardless of which legal
2    standard the ALJ employed, the final result that Nurse Muir's opinion did not factor into his analysis
3    of Plaintiff's case was not impacted. *Id.* Because Nurse Muir did not explain what limitations
4    flowed from her findings of Plaintiff's mental impairments, the Commissioner says the ALJ was
5    correct in not devoting significant time to discussing Muir's medical conclusions.  *Id.* at 4.

6        Regarding the analysis of other medical opinions in the record, the Commissioner accuses
7    Plaintiff of not carrying her burden by failing to explain how the ALJ's decision would have been
8    different in any substantive way had the ALJ applied the former regulations versus the current one.
9    *Id.*  Because supportability and consistency were among the factors used to evaluate pre-March 2017
10   medical opinions, the ALJ argues he was within his legal authority to include them in his analysis
11   here.  *Id. citing* 20 C.F.R. § 416.920c(3)-(4).

12   D.    Summary of the ALJ's Decision.

13       The ALJ identified Plaintiff's depression, PTSD, anxiety, bipolar disorder, asthma, obesity,
14   and degenerative disc disease as medically determinable impairments.  AR 35.  However, the ALJ
15   found none of these impairments, singularly or in combination, met or equaled the severity of one
16   of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  *Id.*  The ALJ found Plaintiff's
17   mental impairments did not satisfy the criteria set forth in the Social Security regulations governing
18   mental impairments and whether they are to be deemed severe.  AR 36-37.  The ALJ found that by
19   July 1, 2018, there was medical improvement in Plaintiff's psychological impairments with only
20   moderate limitations and most examinations revealing normal memory, good judgment and insight,
21   the ability to complete serial threes, good grooming, and normal moods and affects.  AR 37 *citing*
22   AR 698-699, 719, 793, 797-798, 807-808.  The ALJ concluded Plaintiff's medical improvement
23   meant that the impairments Plaintiff had when originally determined to be disabled no longer met
24   or medically equaled the same listing.  *Id.*  After crafting Plaintiff's RFC, the ALJ discussed the
25   severity of the symptoms of Plaintiff's medical impairments and how the ALJ evaluated Plaintiff's
26   testimony.  AR 37-40.

27       The ALJ next discussed the medical opinions and prior administrative medical filings in the
28   record.  AR 40.  The ALJ first discussed the findings of non-examining state agency consultant Ana

Olivares who opined that Plaintiff had moderate limitations in interacting with others, concentrating, maintaining pace, and managing herself. *Id. citing* AR 744, 748-751. Dr. Olivares concluded Plaintiff could frequently interact with supervisors, occasionally interact with coworkers and the public, could adapt and adjust to standard workplace changes of an unskilled work environment, and could avoid common hazards. *Id. citing* AR 748-751. The ALJ found this portion of Dr. Olivares' opinion persuasive as it was consistent with and supported by other evidence in the record (specifically records from Nurse Muir), but further concluded additional restrictions were necessary given Plaintiff's testimony about the severity of her symptoms. *Id.* However, the ALJ found unpersuasive the portion of Dr. Olivares' opinion that Plaintiff had no to mild limitations in understanding, remembering, and applying information. *Id. citing* AR 748-749.

The ALJ next reviewed the findings of non-examining state agency consultant Adrianne Gallucci who opined that Plaintiff had only mild limitations in understanding, remembering, applying information, interacting with others, concentrating, persisting, maintaining pace, and adapting or managing herself. AR 41 *citing* AR 270. The ALJ found Dr. Gallucci's opinions to be unpersuasive because her proposed limitations were inconsistent with Plaintiff's self-report and objective evidence in the record indicating poor recognition, coping, and concentration. *Id. citing* AR 454, 787, 789, 791.

Next, the ALJ discussed the opinion of consultative examiner Mark Short. *Id.* Dr. Short opined that Plaintiff had moderate limitations in interacting and adaptation but no to mild limitations in understanding and concentration. *Id. citing* AR 702-703. The ALJ found the portion of Dr. Short's opinion assigning moderate limitations to Plaintiff's ability to interact and adapt to be persuasive as such limitations were consistent with and supported by evidence in the record, Plaintiff's self-reporting, and the opinion of Dr. Olivares. *Id. citing* AR 454-455, 744, 787, 789, 791. However, the ALJ did not find Dr. Short's opinion that Plaintiff had no to mild limitations in understanding and concentration because these limitations were not consistent with or supported by record evidence or Plaintiff's self-report. *Id. citing* 454, 787, 789, 791.

The ALJ then reviewed the findings of non-examining state agency consultants Jon Arnow and Navdeep Dhaliwal. AR 41-42. Each doctor opined that Plaintiff would require several physical

restrictions in the workplace. *Id. citing* AR 272-275, 724-731. Because most of the physical restrictions were supported by medical evidence in the record, the ALJ concluded these findings were mostly persuasive although he determined several additional restrictions were necessary to be added to Plaintiff's RFC. *Id.* The ALJ also reviewed the findings of consultative examiner David Mumford who observed Plaintiff and identified several forms of physical restrictions Plaintiff would require in the workplace. AR 42 *citing* AR 710-711. Because the majority of Dr. Mumford's proposed restrictions were not supported by the medical record or consistent with the opinions of Drs. Arnow and Dhaliwal, the ALJ found Dr. Mumford's opinion mostly unpersuasive. *Id.*

The ALJ discussed the findings of medical evaluator Roman Castillo who assigned certain physical restrictions to Plaintiff. *Id. citing* AR 752. The ALJ deemed a portion of Dr. Castillo's findings persuasive (Plaintiff's need for limited interaction) but not others (Plaintiff's ability to perform light work with limited interaction). AR 42-43. The ALJ found the unpersuasive portion of Dr. Castillo's opinion not supported by the record and inconsistent with Drs. Arnow and Dhaliwal's findings. *Id.*

The ALJ reviewed the report of Nurse Muir who concluded that Plaintiff was unable to work and could not function well. AR 43 *citing* 753, 787, 789, 791. The ALJ found these opinions reserved to the Commissioner, thus rendering them neither persuasive nor valuable. *Id.* However, the ALJ found persuasive Muir's opinion, supported by objective evidence in the record, demonstrating poor concentration, memory, and cognitive skills. AR 40-41 *citing* AR 787, 789, 791.

The ALJ disregarded the testimony of Plaintiff's mother, a third party, as neither inherently persuasive nor valuable. *Id.* The ALJ found the medical opinions from before the relevant time period as unpersuasive because they were not supported by evidence during the period at issue. *Id. citing* AR 534-573.

The VE testified that after considering Plaintiff's age, education, work experience, and RFC assigned by the ALJ, it was his opinion that Plaintiff could not perform her past work as a cashier/stocker or school bus driver. *Id.* Thus, the ALJ concluded Plaintiff was unable to perform her past relevant work since July 1, 2018. *Id.* However, the ALJ found, relying on the VE's

testimony, that since July 1, 2018, Plaintiff was capable of making a successful adjustment to work that existed in significant numbers in the national economy thus rendering her no longer disabled. AR 44-45.

E. <u>Analysis</u>.

    1. *The ALJ Erred by Applying the Post-March 2017 Regulations to Plaintiff' Case.*

Case law holds it is the original date that the claimant filed for disability benefits that determines which regulations the ALJ must use to analyze medical opinions in a DIB applicant's record. *Rooker v. Kijakazi*, Case No. 21-cv-00554-AGT, 2023 WL 3565067, at *1 (N.D. Cal. Mar. 31, 2023) ("Because … [the claimant] filed her application for benefits on March 6, 2017, the ALJ should have applied 20 C.F.R. § 404.1527 (not 20 C.F.R. § 404.1520c), which incorporates the 'treating physician rule,' requiring that the ALJ give the opinions of treating physicians the greatest weight."), *citing Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022); *Martinez v. Kijakazi*, Case No. 2:20-cv-02068 WBS CKD (SS), 2022 WL 2193378, at *4 (E.D. Cal. Jun. 17, 2022) ("For all applications filed before March 27, 2017, an ALJ must apply 20 C.F.R. § 404.1527, which underpinned the older medical opinion standard outlined above.") (internal citations omitted).

Plaintiff filed her application for disability benefits on December 23, 2009. AR 261. Therefore, the Court finds the ALJ erred when he applied the regulations in 20 C.F.R. § 404.1520c in conducting his analysis of the various medical opinions in the record. AR 40-43. The question before the Court is whether the error by the ALJ in applying the post-March 27, 2017 regulations is harmless or worthy of remand.

    2. *The ALJ's Error Was Harmless, and His Decision Should Not be Disturbed.*

In accordance with the Social Security regulations in effect before March 27, 2017, the courts "developed standards that guide … [their] analysis of an ALJ's weighing of medical evidence." *Ryan v. Commissioner of Social Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008). For claims filed before March 27, 2017, courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). For cases falling under this rubric,

"greater weight [should be given] to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989), *citing Sprague v. Brown*, 812 F.2d 1226, 1230 (9th Cir. 1987). "While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a nonexamining physician." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal citation omitted); *see also* 20 C.F.R. §§ 404.1527, 416.927. If the treating physician's opinion on the nature and severity of the claimant's impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record, it will be given controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Social Security Ruling ("SSR") 96-2p (same).

To satisfy the "substantial evidence" requirement of the specific and legitimate reasons standard, the ALJ should set forth a "detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretations thereof, and mak[e] findings." *Garrison*, 759 F.3d at 1012 *citing Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (internal citation and quotation marks omitted). The ALJ can never arbitrarily substitute his own judgment over the opinion of competent medical professionals. *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999).

The ALJ complied with the pre-March 2017 regulations applicable to conclusions by medical professionals when evaluating Nurse Muir's opinion directly addressing whether Plaintiff could work. *Klein v. Berryhill*, Case No. 2:16-cv-02673-RFB-CWH, 2017 WL 5175593, at *6 (D. Nev. Nov. 8, 2017) ("Whether a claimant is disabled is an administrative determination reserved to the Commissioner, not one to be provided by a claimant, her doctor, or any lay witness. *See* 20 C.F.R. §§ 404.1527(d)(1)-(3), 416.927(d)(1)-(3) (such opinions on issues reserved to the Commissioner are not medical opinions and the ALJ "will not give any special significance" to such a conclusion)"); *Carroll v. Saul*, Case No. 2:17-cv-02237-MMD-CLB, 2019 WL 7496556, at *5 (D. Nev. Dec. 23, 2019), *citing McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("The law reserves the disability

10

determination to the Commissioner"); *Debra H. v. Saul*, Case No: 1:18-cv-03172-FVS, 2019 WL 7815764, at *5 (E.D. Wa. Sept. 26, 2019) (same).

The ALJ was within his authority to not consider the disability conclusions made by Nurse Muir that Plaintiff could not function well or find a job and that she was not a candidate for work. AR 787, 789, 791. The ALJ was entitled to and did in fact find those statements unpersuasive in formulating Plaintiff's RFC and his eventual finding that Plaintiff's disability had ended on July 1, 2018. AR 43.

As for Nurse Muir's observations that Plaintiff had poor coping skills, concentration, and focus, the ALJ's analysis is replete with his use of Nurse Muir's clinical observations to discount other providers' opinions that Plaintiff had only no to mild limitations in understanding and concentration. AR 40-41. Therefore, it is clear the ALJ assigned value to Nurse Muir's opinions and incorporated them into his RFC finding while discounting the portion of her opinion issuing a finding reserved to the Commissioner. Regarding the weight given to Nurse Muir' findings, Plaintiff cites no authority, and the Court found none, standing for the proposition that if a medical opinion, even a treating source, opines that a claimant has "poor cognition" or "poor concentration" the ALJ must find more than a moderate limitation in the claimant's ability to understand, remember, apply information, concentrate, persist, maintain pace, or adapt oneself. AR 9-10. The ALJ acknowledged Nurse Muir's opinions regarding Plaintiff's concentration and cognition but pointed to several exams in the record from several providers, including Nurse Muir, that Plaintiff had normal memory and good judgment and insight. AR 36 citing AR 698-699, 719, 793, 799-800, 807-808. The Court finds the ALJ explained with specific reasons his assignment of moderate limitations, and Plaintiff's argument that the ALJ failed to evaluate Nurse Muir's opinion fails.

When considering the opinions of Drs. Olivares, Gallucci, Short, Arnow, Dhaliwal, Mumford, and Castillo, the ALJ focused on the support for each in the overall record as well as on consistency with fellow physicians' opinions. As discussed *supra*, this is the wrong standard to apply as this case was filed in 2009 before the new regulations took effect on March 27, 2017. However, the Court finds this error is harmless because the supportability and consistency of medical opinions are two of five factors used to analyze medical opinions in the pre-March 2017 hierarchical

11

system. *Anita W. v. Berryhill*, Case No. 2:17-cv-08338-GJS, 2019 WL 316630, at *4 (C.D. Cal. Jan. 24, 2019), *citing* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3),[1] 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).[2] The Court finds no defect in the ALJ's analysis of any medical opinion as the ALJ described in detail the seven doctors' findings and his analysis of each. AR 40-43. In addition, Plaintiff does not make any substantive argument regarding any opinion other than Nurse Muir's and instead asserts a nebulous contention that a hierarchical consideration of all medical opinions was required. AR 10-12. The Court will not address arguments made by Plaintiff as to the medical opinions of Drs. Olivares, Gallucci, Short, Arnow, Dhaliwal, Mumford, and Castillo as Plaintiff offers no specificity attacking these opinions. *Rondan v. Berryhill*, Case No. EDCV 17-1454 JC, 2018 WL 1569828, at *4 (C.D. Cal. Mar. 29, 2018), *citing Carmickle v. Commissioner of Social Security Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address challenge to ALJ's finding where claimant "failed to argue th[e] issue with any specificity in [ ] briefing") (citation omitted), *Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review ... issues which are argued specifically and distinctly in a party's opening brief.").

The Ninth Circuit holds a harmless error occurs "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout*, 454 F.3d at 1055. An error is construed to be harmless "if the agency's path may reasonably be discerned," even if the agency "explains its decisions with less than ideal clarity." *Alaska Department of Environmental Conserv. v. EPA*, 540 U.S. 461 (2004). Here, the ALJ's error in applying the wrong set of Social Security regulations to his analysis of the medical opinions in the record was harmless because the ALJ's disability conclusion was sound.

Plaintiff is not entitled to remand because she is displeased with the ALJ's conclusions. *See Jackson v. Saul*, Case No. EDCV 19-01576-JEM, 2020 WL 2768682, at *5 (C.D. Cal. May 27, 2020) ("Plaintiff simply disagrees with the ALJ's evaluation of the evidence, but it is the ALJ's

---

[1] "Supportability. The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."

[2] "Consistency. Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."

responsibility to resolve conflicts in the medical evidence and ambiguities in the record.") (citation omitted). The Court's role is not to second guess the ALJ's determination even if there is more than one interpretation of the evidence that could have been made. *Todd v. Saul*, 822 Fed.Appx. 613, 615-616 (9th Cir. 2020). This standard does not yield the result Plaintiff seeks.

The Court affirms the Commissioner's decision and denies Plaintiff's Motion for Reversal and Remand on the contention that the ALJ's analysis of the medical opinions in the record was fatally flawed.

**IV.    ORDER**

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 18) is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court must enter judgment in favor of Defendant and close this case.

DATED this 25th day of July, 2023.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE